UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KENNY L. FUTCH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Cause No. 3:17-CV-387-JD-MGG |
|  | ) |  |
| OFFICER GRAY, *et al.*, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

OPINION AND ORDER

Kenny L. Futch, a prisoner without a lawyer, filed a complaint naming eleven defendants. A filing by an unrepresented party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Futch alleges that he arrived at the Miami Correctional Facility on February 17, 2016, and Officer Gray destroyed his property. (ECF 12 at 3.) Futch indicates that the property included various items,[1] including his legal materials, the loss of which

---

[1] Futch does not raise a claim based on the destruction of the non-legal items, but even if he had, he would not be permitted to proceed on that claim because state remedies are available to him to redress the destruction of property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate postdeprivation remedy in the Indiana Tort Claims Act, and no more process was due.").

affected his ability to access the courts. Futch alleges that Officer Gray, Officer Martin, Officer Flack, Sgt. Bowman, and Brenda Bowman denied him access to the law library and this caused him to miss court deadlines.[2]

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words,

---

[2] Futch also alleges these defendants denied him access to the informal grievance process, but he has no constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008)(noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure).

2

"the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, Futch must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Although Futch asserts that multiple cases were affected, the only case Futch identifies is *Futch v. Superintendent*, 3:14-CV-1925-RLM. In *Futch v. Superintendent*, the district court found that Futch's petition pursuant to 28 U.S.C. § 2254 was untimely[3] and denied Futch a certificate of appealability. *See Futch v. Superintendent*, 3:14-CV-1925-RLM at ECF 32 ("Because there is no basis for finding that jurists of reason would debate the correctness of this procedural ruling or find a reason to encourage him to proceed further, a certificate of appealability will be denied."). Futch then filed a timely notice of appeal and sought a certificate of appealability from the United States Court of Appeals for the Seventh Circuit. On April 26, 2016, the Seventh Circuit denied Futch's request for a certificate of appealability, finding that there was "no substantial showing of the denial of a constitutional right." (ECF 12-3 at 14; *Futch v. Superintendent*, 3:14-CV-1925-RLM at ECF 62-1.)

---

[3] The untimeliness of Futch's petition pursuant to 28 U.S.C. § 2254 is not the result of the actions of these defendants. That petition was filed on September 24, 2014, long before Futch was transferred to Miami.

3

Futch sought certiorari following the Seventh Circuit's decision, but he filed his petition roughly five months late. A letter dated January 9, 2017, from the United States Supreme Court explains that:

> The above-entitled petition for a writ of certiorari was postmarked December 21, 2016 and received December 27, 2016. The papers are returned for the following reason(s):
>
> The petition is out-of-time. The date of the lower court judgment or order denying a timely petition for rehearing was April 26, 2016. Therefore, the petition was due on or before July 25, 2016. Rules 12.1, 29.2 and 30.1 When the time to file a petition for a writ of certiorari in a civil case (habeas action included) has expired, the Court no longer has the power to review the petition.

(ECF 12-5 at 40.) Even if it is presumed that the petition was five months late due to the defendants' actions, Futch has not demonstrated that he was prejudiced by this. Both the district court and the Court of Appeals for the Seventh Circuit had already found he did not have a meritorious claim and denied Futch a certificate of appealability. He has not provided any information that suggests his petition for certiorari would have been granted if it had been filed on time. Because Futch has not provided the bare minimum of information needed to permit him to proceed, he has not stated a claim that Officer Gray, Officer Martin, Officer Flack, Sgt. Bowman, or Brenda Bowman impeded his access to the courts.

On April 14, 2016, Futch filed an informal grievance against Officer Flack and Officer Martin claiming he was being denied timely and adequate access to the courts by not being allowed regular law library visits and access to the "L.L. Box" (presumably his legal materials)" since his arrival at Miami on February 17, 2016. (ECF 12-3 at 11.)

4

Futch claims that Officer Flack retaliated against him for filing this grievance by using the very same grievance form to assert a conduct report against him for using a counterfeit form to write the grievance. (ECF 12 at 4.) A report of conduct dated April 21, 2016, and submitted as an exhibit to the complaint states the following:

> Today April 21, 2016, I (J. Flack) was going through the request slips for the Law Library from the mailroom. I came across a document with the heading "Offender Informal Grievance" across the top. The document was filled out by Offender Futch, Kenny DOC# 964875. It was not the state form used by the Indiana Department of Correction. The created form included the Indiana Department of Correction Logo fixed on it to make it appear official as well.

(ECF 12-3 at 17.) A hearing was held and Futch was found guilty, but he did not lose credit time as a result of his guilt.[4] (ECF 12-3 at 20; ECF 12-4.) "To prevail on his First Amendment retaliation claim, [Futch] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Futch alleges that he engaged in protected activity by filing an informal grievance and Flack filed a conduct report against him in retaliation for filing that grievance. The filing of a conduct report would likely deter future First Amendment activity. Here, giving Futch the inferences to which he is entitled, this states a claim.

---

[4] If Futch had lost credit time due to his guilty finding, then he could not pursue a claim that he was wrongfully charged with the conduct violation until his guilty finding was overturned. *See Edwards v. Balisok*, 520 U.S. 641 (1997).

Next, Futch alleges that Officer J. Dauenhauer falsely claimed that Futch took two food trays with a meal and, as a result, charged Futch with "possession of unauthorized property." The report of conduct provides the following:

> On 5/8/2016 at 6:24 A.M. while at my post in chow hall 2 I, Officer J. Dauenhauer, noticed Offender Futch, Kenny DOC#964875 go through the chow line and get a regular tray. Moments later Offender Futch approached the table where he had already got his diet tray. I then observed Offender Futch eat from both trays. When asked about the two trays Offender Futch acted as if he didn't know what I was talking about. I would at this time like to ask for reimbursement for the tray taken by Offender Fatch [sic].

(ECF 12-3 at 19.) Futch lost seven days of good time credit due to his finding of guilt on this conduct charge. (ECF 12-3 at 27.) Because Futch lost time credit, he cannot pursue a claim that he was wrongfully charged until the guilty finding is overturned. *See Edwards v. Balisok*, 520 U.S. 641 (1997)("[A] state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated.").

Next, Futch alleges that Lt. Loy, the individual that presided over the disciplinary hearings, suffered from a conflict of interest. He complains that Lt. Loy vouched for the credibility of Officer Flack by stating that he was a good officer during the hearing. Futch further asserts that Lt. Loy found Futch guilty without sufficient evidence and overstepped her authority by overseeing both disciplinary matters. In the prison disciplinary context, adjudicators are "entitled to a presumption of honesty and integrity," and "the constitutional standard for improper bias is high." *Piggie v. Cotton*,

6

342 F.3d 660, 666 (7th Cir. 2003). Due process would, for example, prohibit a prison official who was personally and substantially involved in the underlying incident from acting as a decision-maker in the case. *Id.* In contrast, due process is not violated simply because the hearing officer knew the inmate or presided over one of the prisoner's prior disciplinary cases. *Id.* Therefore, Futch has not stated a claim against Lt. Loy.

As a result of Futch's conduct problems, he was reclassified[5] to the INP/PHU Program. Futch's reclassification meant he was no longer eligible to receive administrative idle pay. In PHU Futch enjoyed fewer freedoms, including less law library time, less exercise, no administrative idle pay, no job eligibility, and no access to church, books or computers. (ECF 12-3 at 31.) Additionally, he was unable to participate in programs such as the Plus Program that would reduce the length of his incarceration. (*Id.*). And, due to Sharon Hawk's decision to place the PHU dorm on modified lockdown, residents of PHU did not get "Christmas sacks" that other inmates received. But, prison administrators are afforded wide-ranging deference in managing prisons and deciding where to house inmates. *See Whitley v. Albers*, 475 U.S. 312, 321–22 (1986) and *Sandin v. Conner*, 515 U.S. 472, 485 (1995). While Futch enjoyed fewer privileges in PHU, he has not described conditions so restrictive that they implicate a liberty interest. *See Townsend v. Cooper*, 759 F.3d 678, 685-86 (liberty interest established where restricted housing "imposed conditions resulting in an atypical and significant hardship

---

[5] Futch does not indicate who determined that he would be reclassified. Instead, he alleges that each of the defendants played a role in the decision to reclassify him.

7

compared to ordinary prison life."). Therefore, Futch's allegations regarding his transfer to PHU do not state a claim.

Futch also claims that Cathy Griffin, Officer Benson, Brenda Bowman, Sgt. Bowman, A. Heishman, Sharron Hawk, Charlene A. Burkett, and unnamed officials of central office failed to supervise adequately, failed to ensure procedures were followed, or otherwise allowed these injustices to occur. However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these individuals cannot be held liable simply because they have supervisory authority. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Accordingly, his claims against each of these defendants fail.

For these reasons, the court:

(1) GRANTS Kenny Leroy Futch leave to proceed against Officer Flack in his individual capacity for compensatory and punitive damages on his First Amendment claim that Officer Flack retaliated against him for filing an informal grievance when he wrote the April 21, 2016, conduct report;

(2) DISMISSES all other claims;

(4) DISMISSES Officer Gray, Officer Martin, Lt. Loy, A. Heishman, Sgt. Bowman, Brenda Bowman, Cathy L. Griffin, Sharron Hawk, J. Scaife, and J. Havenhauer;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Officer Flack at the Indiana Department of Correction with a copy of this order and the complaint as required by 28 U.S.C. § 1915(d); and

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Officer Flack respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to

8

the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on March 2, 2018.

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT